IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| JAMES BLASIC, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-04-4022 |
| CHUGACH SUPPORT SERVICES, INC., *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

James Blasic sued Chugach Support Services, Inc. ("CSS") and Chugach Alaska Corporation ("CAC") for violating 42 U.S.C. § 1981. Pending are the Defendants' motion for reconsideration of this Court's April 1, 2010 Order and their motions in limine to (1) allow evidence of Blasic's subsequent employment history, (2) preclude evidence of discrimination not known to Hutton at the time he fired Blasic, and (3) preclude EEOC records and evidence about the EEOC process. For the following reasons, the motions in limine to preclude evidence will be denied; the motion in limine to allow evidence of Blasic's subsequent employment history will be granted in part and denied in part; and the motion for reconsideration will be granted in part and denied in part.

I.   Background[1]

CAC is an Alaska Native Corporation formed under the Alaska Native Claims Settlement Act.  CSS, a subsidiary of CAC, did construction projects for the United States Department of Health and Human Services ("HHS") at the National Institutes of Health campus in Bethesda, Maryland.  Blasic was the CSS finance manager, and David Hamlett was the NIH site project manager.[2]

On September 20, 2003, John Weldon, the NIH site superintendent, terminated two Hispanic painters[3] on Hamlett's recommendation.  Two Hispanic carpenters employed at the NIH site had also been terminated that month.  On October 15, 2003, Blasic sent an email to CAC senior financial analyst Kathy Schreiber about potential lawsuits and EEOC claims against Chugach by recently terminated Latino employees.  Schreiber forwarded this email to CSS Director of Construction Services James Hutton, who was directed to investigate.

On October 22, 2003, Hutton met with Blasic to discuss the alleged discrimination and the investigation.  During that conversation, Blasic said Hamlett was a "racist" and "bigot" and

---

[1]  These facts are summarized from the Court's summary judgment opinion.  *See* Paper No. 166.

[2]  Around June 2003, Hamlett became the NIH site human resources manager.  Hamlett Dep. 59:7-60:18.

[3]  They were former plaintiffs in this suit, Carlos Borrayo and Mario Rodas.

2

accused Hutton of trying to "cover up what Hamlett was doing at the site."[4]  Hutton fired Blasic later that day.[5]

On November 24, 2003, Blasic filed a timely charge with the Maryland Commission on Human Relations and was later issued a right to sue letter by the EEOC.  On December 12, 2004, Blasic and Jose Aleman, Cesar Basilis, Borrayo, and Rodas sued CSS and CAC for violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.  On November 11, 2005, the Court dismissed Aleman's and Basilis's claims. Paper No. 64.  On March 28, 2006, the Court granted summary judgment to the Defendants on Borrayo, Rodas, and Blasic's claims.  Paper Nos. 103.  They appealed.  Paper No. 105.  The Fourth Circuit reversed the order of summary judgment against Blasic on his § 1981 claims.[6]  *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206 (4th Cir. 2007).

On November 11, 2009, the Court (1) denied the Defendants' motion for summary judgment on Blasic's § 1981 claims; (2) denied Blasic's motion for partial summary judgment; (3) granted the Defendants summary judgment on Blasic's claims for front pay

---

[4]  Def.'s Mot. Summ. J. Ex. 44; Hutton Dep. 129:23-25.

[5]  Blasic's Personnel Action Notice states that he was terminated because he was "disruptive, insubordinate, not a team player." Def.'s Reply & Opp. Ex. 47.  Only Hutton signed this form, and the signature lines for "recommended by," "Site Human Resources," and "CSS Project Manager/Corporate Human Resources" are blank.  *Id*.

[6]  On February 27, 2007, Borrayo and Rodas voluntarily dismissed their claims with prejudice.

and emotional and reputational damages; and (4) denied the Defendants summary judgment on Blasic's claims for back pay and punitive damages. Paper No. 167.

On March 23, 2010, the Defendants filed eight motions in limine. Paper Nos. 172-179. On April 1, 2010, the Court denied all but three--Paper Nos. 172, 178, and 179--of the Defendants' motions in limine as untimely requests for reconsideration. Paper No. 184. On April 2, 2010, the Defendants moved for reconsideration of that order as to Paper Nos. 175 and 177. Paper No. 185.

II. Defendants' Motions in Limine

    A.   To Allow Evidence of Blasic's Subsequent Employment History

The Defendants seek to admit two documents relating to Blasic's post-termination employment with Energetics, Inc.: his May 20, 2004 Application for Employment and his April 8, 2005 Exit Interview survey (the "Energetics Documents"). Paper No. 172, Exs. 1 & 2.[7] They argue that portions of these documents are admissible: (1) to show Blasic's character for untruthfulness under Fed. R. Evid. 608(b); (2) as relevant to Blasic's claim for punitive damages under Fed. R. Evid. 402; (3) to show

---

[7] Because it is unclear what other information--if any--the Defendants will seek to introduce from Blasic's subsequent employment history, the Court will only address the admission of these two documents.

4

that Blasic's accusations against James Hutton and David Hamlett were not mistakes or accidents under Fed. R. Evid. 404(b); and (4) to show Blasic's motive or bias to bring suit against the Defendants. Paper No. 172 at 1-2.

### 1. Character for Untruthfulness

Under Fed. R. Evid. 608(b), specific instances of conduct to show character for untruthfulness may not be proved by extrinsic evidence. *See United States v. Sanders*, 189 Fed. Appx. 207, 210 (4th Cir. 2006).[8] However, Blasic does not object to cross-examination on statements made in his Application for Employment, which explain the reason for his termination from Chugach. Accordingly, the Application will be admissible for that limited purpose.

### 2. Punitive Damages

Evidence is "relevant" if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." Fed. R. Evid. 401. Citing *Laymon v. Lobby House, Inc.*, 613 F. Supp. 2d 504, 513 (D. Del. 2009), the Defendants argue that Blasic's post-termination conduct "shows that his . . . conduct may have played a significant role in his

---

[8] Although the Defendants may be permitted to question Blasic about his Application for Employment on cross-examination, the documents themselves are inadmissible under 608(b) to show his character for truthfulness. *See United States v. Drake*, 932 F.2d 861, 867 (10th Cir. 1991).

termination from CSS." Paper No. 172 at 6. In *Laymon*, the court considered the plaintiff's pre-termination conduct as relevant evidence of the employer's culpability for discriminating against her. By contrast, the Defendants seek to introduce Blasic's conduct *after* his termination, which has no relevance to their decision to fire him or degree of culpability. Because the purpose of punitive damages is to punish the wrongdoer and not to compensate the victim, *see Exxon Shipping Co. v. Baker*, 128 S.Ct. 2605, 2621 (2008), Blasic's post-termination conduct is irrelevant to the amount of punitive damages.[9]

    3.    Absence of Mistake

Under Fed. R. Evid 404(b), prior acts are "not admissible to prove the character of a person in order to show action in conformity therewith" but may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b). The Defendants argue that Blasic's complaints

---

[9] Citing *Laymon v. Lobby House, Inc.*, 613 F. Supp. 2d 504, 513 (D. Del. 2009), the Defendants argue that Blasic's post-termination conduct "shows that his . . . conduct may have played a significant role in his termination from CSS." Paper No. 172 at 6. In *Laymon*, the court considered the plaintiff's pre-termination conduct as relevant evidence of the employer's culpability for discriminating against her. By contrast, the Defendants seek to introduce Blasic's conduct *after* his termination, which has no relevance to their decision to fire him or degree of culpability.

about his "biased," "demanding," "unreasonable" and "unethical" supervisor in his Exit Interview survey are admissible to show that his allegations of discrimination against the Defendants were "not merely accidents, mistakes, or isolated incidents." Paper No. 172 at 6-7. Because the Defendants have failed to explain *how* these statements are probative of Blasic's absence of mistake--and why his absence of mistake is relevant here--the Court will deny the motion to admit the Exit Interview survey statements on that basis.

    4.   Motive & Bias

Cross examination may be "directed toward revealing possible biases, prejudices, or ulterior motives of the witnesses as they may relate directly to issues or personalities in the case at hand." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Unless it is unduly prejudicial,[10] extrinsic evidence may be admitted to show a witness's bias and motive to fabricate charges. *See Crawford v. Washington*, 541 U.S. 36, 59-61 (2004).

The Defendants argue generally that "Blasic's subsequent employment history is admissible . . . to show that [he] was biased or had motive in bringing allegations against the Defendants," Paper No. 172 at 7, but provided no explanation of

---

[10] Evidence will be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice. Fed. R. Evid. 403.

*how* that history demonstrates bias or motive. Accordingly, the motion to admit on this basis will also be denied.

> B. To Preclude Evidence of Discrimination Not Known to Hutton at the Time He Fired Blasic

To prove his retaliation claim, Blasic must show that Hutton knew of Blasic's discrimination complaints and terminated him, at least in part, because of those complaints. *See Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 242 (4th Cir. 1997). The Defendants seek to exclude all evidence of their alleged discrimination that was not known to Hutton at the time he terminated Blasic, arguing that such evidence is not relevant to the retaliation claim. Paper No. 178 at 4-7. Because the Court cannot anticipate what the evidence will show Hutton knew--or might have known--at the time he decided to fire Blasic, this motion will be denied with the understanding that the parties may renew these arguments in objections at trial.

> C. To Preclude EEOC Complaints, Findings, and Correspondence

Moving to preclude the admission of all "evidence regarding the EEOC process and EEOC documents," the Defendants argue that (1) the EEOC did not have jurisdiction over them; (2) the EEOC complaints filed by the former CSS employees are irrelevant to the retaliation claim because they were filed *after* Blasic's termination; (3) the EEOC documents "lack adequate assurances of trustworthiness"; (4) the prejudicial effect of these documents

8

outweighs their probative value; and (5) the materials in the EEOC file are inadmissible hearsay. Paper No. 179.[11] By supplemental memorandum, the Defendants also moved to preclude admission of the complaints filed against CSS by Blasic, Aleman, Basilis, Rodas, and Borrayo with the Maryland Commission on Human Relations (the "EEOC Complaints") and two letters of "Determination" by the EEOC,[12] arguing that these hearsay documents are inadmissible under the exceptions in Fed. R. Evid. 803(6) or 803(8). *See* Paper No. 190.

1. EEOC Jurisdiction

The Defendants argue that, because they are not covered "employers" under Title VII,[13] the EEOC did not have jurisdiction over them and thus documents related to the EEOC proceedings

---

[11] Because the Defendants have failed to identify the specific documents challenged in their latter three arguments, this Court will not consider those arguments.

[12] On July 21, 2010, Blasic filed notice of his intent to introduce those documents at trial pursuant to Fed. R. Evid. 902(11)(C). *See* Paper No. 191, Ex. A. The letters of "Determination" provide a brief recitation of the facts, results of the investigation, and a finding of probable cause to believe that discrimination (or retaliation) occurred. *See* Paper No. 191, Ex. A at 9-13.

[13] *See* 43 U.S.C. § 1626(g) (excluding a "Native Corporation" from the definition of "employer" for purposes of implementation of the Civil Rights Act of 1964).

9

must not be admitted. Paper No. 179 at 5.[14] Under 42 U.S.C. § 2000e-5:

> *whenever* a charge is filed by or on behalf of a person claiming to be aggrieved . . . alleging that an employer, employment agency, labor organization, or joint labor management committee . . . has engaged in an unlawful employment practice, the [EEOC] *shall* serve a notice of charge . . . and *shall* make an investigation thereof.

(emphasis added). This broad authority to pursue charges of employment discrimination is consistent with the remedial purposes of Title VII, *see Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997), and 42 U.S.C. § 1981, *see Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 408 (1982).

The CSS employees alleged employment discrimination and retaliation in violation of Title VII in their EEOC complaints. Thus, at the time of its investigation, the EEOC was acting pursuant to its statutory authority and duty to investigate Title VII claims. Although the Defendants raised their statutory exemption with this Court on summary judgment, that defense was never asserted during the administrative process.[15]

---

[14] The Defendants have provided no authority for the proposition that records produced pursuant to an agency investigation must be excluded if it is later determined that the Agency lacked jurisdiction at the time of its investigation.

[15] Even when employers have challenged the EEOC's jurisdiction at the time of the investigation, courts have given the EEOC the power to investigate employment discrimination claims. *See EEOC v. United Air Lines*, 287 F.3d 643 (7th Cir. 2002) ("[T]he EEOC's authority to investigate is not negated simply because the party under investigation may have a valid defense to a later suit.")

10

This Court's subsequent determination that the Defendants were not covered by Title VII does not retroactively remove the EEOC's jurisdiction to investigate the CSS employees' Title VII claims at the time they were made. Accordingly, the motion to preclude admission of the EEOC records based on the EEOC's lack of jurisdiction will be denied.

        2.   Relevance of the Discrimination Complaints

To prove retaliation, Blasic must show that he "opposed an unlawful employment practice which he reasonably believed had occurred or was occurring." *Peters v. Jenney*, 327 F.3d 307, 320-21 (4th Cir. 2003)(internal quotation omitted). Here, Blasic argues that the EEOC Complaints and the Determination letters--finding "reasonable cause" to believe there had been discrimination--are relevant to show that he had a reasonable belief that an unlawful employment practice had occurred. Paper No. 186 at 16. As Blasic has provided a plausible theory of relevance, this Court will deny the Defendants' motion to preclude those documents on the grounds of relevance.

---

(internal quotation omitted). The Defendants have cited *EEOC v. Ocean City Police Dep't*, 820 F.2d 1378, 1380 (4th Cir. 1987) for the proposition that it is "beyond the authority of the EEOC to investigate charges which cannot be pursued." *See* Paper No. 192 at 2. Because this case was later vacated and remanded, *see EEOC v. Ocean City Police Dep't*, 486 U.S. 1019 (1988), this Court will not rely on that dicta.

3.  Hearsay Exceptions

Generally, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" is inadmissible as hearsay. Fed. R. Evid. 801(c). But there are numerous exceptions.

Fed. R. Evid. 803(8) excludes from the general hearsay rule:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . [and (C)] factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.[16]

Accordingly, the court may admit an EEOC determination and other EEOC records subject to evaluation of their probative value and possible prejudicial effect. *Cruz v. Aramark Services*, Inc., 213 Fed. Appx. 329, 335 (5th Cir. 2007); Fed. R. Evid. 403.[17]

The Defendants have argued that the requirements of 803(8)(c) have not been met because the EEOC did not conduct an investigation pursuant to "authority granted by law." Paper No.

---

[16] "[A]bsent a showing of untrustworthiness," courts will admit "factual findings resulting from an agency's lawful investigation." *Baker v. North Carolina Dept. of Commerce*, 139 F.3d 887, 1998 WL 168462, at *2 (4th Cir. 1998).

[17] Recognizing their limited probative value, courts frequently preclude admission of EEOC records. *Cox v. Babcock & Wilcox Co.*, 471 F.2d 13, 15 (4th Cir. 1972).

12

190 at 2.[18]  As discussed in Part III.C.1, the EEOC had authority to accept and investigate the complaints of discrimination filed by Blasic, Aleman, Basilis, Rodas, and Borrayo.  Because this Court may admit EEOC records and reports at trial under Rule 803(8) subject to consideration of their trustworthiness and possible prejudicial effect, the motion to preclude their admission on hearsay grounds will be denied.

III. Motion for Reconsideration

    A.    Standard of Review

Motions for reconsideration of an interlocutory order are governed by Rule 54(b), under which "any order or other decision . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).[19]  Thus, a district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment.  *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). [20]

---

[18]  To the extent the Defendants have argued that the sources of information relied on by the EEOC Determination Letter are untrustworthy, those arguments will be addressed when raised at trial.

[19]  *See Mateti v. Activus Fin., LLC*, 2009 U.S. Dist. LEXIS 99869, *9-10 (D. Md. Oct. 27, 2009).

[20]  "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment."  *Am. Canoe*, 326 F.3d at 514 (*citing* 11 James Wm. Moore et al., *Moore's Federal Practice*

13

Although Rule 60(b) applies only to final judgments, a court may consider the reasons in that rule when deciding whether to grant relief under Rule 54(b). *See Mateti*, 2009 U.S. Dist. LEXIS 99869 at *9-10. When a request for reconsideration merely asks the court to "change its mind," relief is not authorized. *Pritchard v. Wal-Mart Stores, Inc.*, 3 Fed. Appx. 52, 53 (4th Cir. 2001). Similarly, a party cannot get reconsideration on the basis of case law or evidence available at the time of the court's order. *Mateti*, 2009 U.S. Dist. LEXIS 99869, at *12.

B. Motion to Reconsider Paper No. 175 and Paper No. 177

On April 1, 2010, this Court declined to consider several of the Defendants' motions in limine "because the legal issues underlying [their] requests for exclusion of evidence [had] been previously decided." Paper No. 175. The Defendants argue that, because the existence of Blasic's *prima facie* case or retaliation was conceded only for the purposes of summary judgment, this Court improperly denied their motions in limine to preclude certain evidence being offered to show "protected activity." Paper No. 185.

---

§ 56.04[3] (3d ed.) ("Rule 60(b) does not govern relief from interlocutory orders . . . .")). *See also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment.").

The opportunity to challenge the sufficiency of the evidence before trial has passed. But the Defendants may raise objections to the relevance of evidence at trial. Accordingly, to the extent these motions in limine challenge the relevance and not the sufficiency of the evidence of retaliation, this Court will consider those issues at trial. The motion for reconsideration will be granted to allow the Defendants to raise objections to the relevance of Blasic's evidence of "protected activity" at trial and denied in all other parts.

III. Conclusion

For the reasons stated above, the motion for reconsideration will be granted in part and denied in part; the motions in limine to preclude evidence will be denied; and the motion in limine to allow evidence of Blasic's subsequent employment history will be granted in part and denied in part.

August 20, 2010    _____/s/_____
Date               William D. Quarles, Jr.
                   United States District Judge